1482

William C. CROWELL, Appellant v. Hoyt D. HERRING, C. Michael Herring, Hoyt's Music Co., Inc., Lawrence E. Wilder and Henry S. Allen, Sr., Respondents.

(392 S.E. (2d) 464)

Court of Appeals

*Joseph H. Lumpkin, Jr.,* and *Thomas E. Elliott, Jr.,* of the *Elliott Law Firm,* Columbia, *for appellant.*

*Robert C. Brown, H. Dewain Herring, Jr.,* and *Theodore von Keller,* Columbia, *for respondents.*

Heard Jan. 24, 1990.

Decided April 2, 1990.

*Per Curiam:*

Plaintiff, William H. Crowell (Crowell) sued defendants Hoyt D. Herring (H. Herring), C. Michael Herring (Herring), Hoyt's Music Co., Lawrence E. Wilder (Wilder) and Henry S. Allen, Sr., (Allen) for slander, libel and malicious prosecution. The trial court granted defendants' motions for summary judgment on the slander and libel causes of action. The malicious prosecution cause of action went to trial whereupon the jury returned a verdict for Crowell against C. Michael Herring in the amount of $8,000. The trial court granted Herring's motion for a judgment n.o.v. on the malicious prosecution action. We affirm.

## FACTS

William H. Crowell was Commander of the Columbia Post #641 Chapter of the Veterans of Foreign Wars (VFW). At the VFW were four video machines maintained by Hoyt's Music Co. The profits from the video machines were split 50-50 between the VFW and Hoyt's Music Co.

In September of 1985, Crowell had a discussion with Herring, president of Hoyt's Music Co., whereby Crowell requested that Herring place two additional video machines at the VFW. Crowell told Herring he thought the VFW

should receive a larger percentage of the profits, specifically the entire profits generated by the two lowest grossing machines, along with the 50-50 division of the profits from the other four machines. Crowell told Herring the additional money generated by the new machines would be used to send VFW delegates to the National Convention.

Herring testified the new arrangement involved his leaving an envelope with Crowell's name on it, along with the amount of profits from the two lowest grossing machines written in the right hand corner of the envelope, with Hazel Eberhardt, the VFW canteen manager. Crowell admitted discussing a new arrangement on the video machines with Herring, but denied making any agreement.

Later in September Herring installed two additional video machines in the VFW. Herring testified he began leaving the aforementioned envelopes, with Crowell's name on them, at the canteen.

Mrs. Eberhardt testified that on one occasion she received an envelope from Herring, after he checked out the machines and counted the profits. She asked Crowell what the envelope meant and Crowell confirmed the VFW was getting 100 percent of the profits from two of the video machines. Eberhardt testified Herring left an envelope each week she was there from September 1985 to December 1985. Eberhardt testified she deposited all money into the safe. Crowell had access to the safe.

On January 8, 1986, Crowell instructed Herring to revert to the way he checked the machines prior to September of 1985, that being a 50-50 split of all proceeds. Herring testified Crowell requested this reversion because a new Quartermaster of the Post would be present during the check-up of the video machines. Crowell denied the reversion was necessary because a new Quartermaster would be present at check-up. Rather, he was concerned about avoiding the appearance of a kickback.

Herring testified Crowell later told him the new Quartermaster was no longer there and to revert to the arrangement in place from September 1985 to December 1985. Herring then told his father Hoyt Herring (H. Herring), Chairman of Hoyt's Music Co., about the arrangement. H. Herring advised his son to discuss the matter with Ralph Pelkey, a long-time

VFW member and former Quartermaster. Pelkey directed Herring to talk with Henry Allen, a VFW trustee. Allen was immediately notified and met with Herring.

Allen requested Herring prepare an affidavit which he did on February 10, 1986, describing his version of the arrangement(s) between Crowell and him. On August 1, 1986, Herring executed another affidavit correcting what he deemed improper use of terminology in the first affidavit.

Later Herring and his father surreptitiously tape recorded a meeting with Crowell. In the tape, Crowell refers to a "rebate" Herring had been giving the VFW, and Crowell discussed the possibility of purchasing video machines from Hoyt's Music Co. for his personal use.

After meeting with Herring and Pelkey, Allen contacted an attorney who advised him to examine the records for evidence of irregularity. Upon examination of the records from the VFW and Hoyt's Music Co., the trustees, with help from a certified public accountant, discovered thousands of dollars were missing based on the amounts Herring reported on Hoyt Music Co.'s records.

The trustees then met with Crowell and confronted him with the evidence they had accumulated. Allen testified Crowell offered to pay $7,000 to $8,000 in restitution and wanted the matter kept quiet. Crowell testified he offered to "step aside." The trustees refused to deal and Crowell resigned.

The new Commander Carl Robinson appointed an investigatory committee to look into the allegations against Crowell. The committee unanimously recommended court-martialing Crowell. The subsequent court-martial resulted in an acquittal on all charges against Crowell.

## ISSUES

I. Did the trial court err in granting defendants' motions for summary judgment on the slander and libel causes of action?

II. Did the trial court err in granting a judgment n.o.v. in favor of defendant C. Michael Herring after the jury returned a verdict for plaintiff William H. Crowell?

## DISCUSSION

### I.

As noted above Crowell sued Herring, H. Herring, Wilder, Allen and Hoyt's Music Co., (defendants) for slander and libel. Wilder and Allen were trustees of the VFW Post who initially investigated the charges against Crowell. Herring and H. Herring were principals in Hoyt's Music Co., the company that maintained the video machines at the VFW. Crowell alleged Herring libeled him by the two affidavits Herring wrote detailing their relationship. Specifically, Crowell complained of language that appeared in Herring's affidavit #1 but was corrected as improper terminology in Herring's affidavit #2. The language Crowell complained of read "we put the two extra machines in as directed and began giving him what he required on September 16, 1985, and weekly thereafter until December 30, 1985, for a total of $6,212.00, *which he received during this period.*" [Emphasis added.] Affidavit #2 corrected the emphasized language to read "which was left at the Post during this period." Allen then received Herring's affidavit #1 and discussed it with Wilder. Allen and Wilder were subsequently named by Commander Robinson to the committee investigating Crowell. According to Crowell's responses to interrogatories, Allen and Wilder were sued for republishing the slander and libel appearing in Herring's affidavits and for their role in the investigation of Crowell. H. Herring was sued because of statements he made at Crowell's court-martial hearing.

All defendants moved for summary judgment on a theory any statements alleged by Crowell to be defamatory took place within a judicial proceeding and consequently were absolutely privileged.

The common law rule protecting statements of judges, parties and witnesses offered in the course of judicial proceedings from a cause of action in defamation is well recognized in this jurisdiction. *Vausse v. Lee*, 1 Hill 197, 26 Am. Dec. 168 (1833); *Corbin v. Washington Fire & Marine Ins. Co.*, 278 F. Supp. 393, (D.S.C. 1968), *aff'd* 398 F. (2d) 543 (4th Cir. 1968). *See generally* Restatement (Second) of Torts Sections 585, 587, 588 (1977). The privilege affords absolute protection upon a bipartite showing that the statements were

issued as part of a judicial proceeding and the alleged defamation is relevant to a matter at issue in the case. *Corbin.*

The trial court held the VFW court-martial was a judicial proceeding. Crowell does not appeal this finding, nor does he argue the defendants' statements were irrelevant to the issues he was eventually brought to trial on. The next and more important question is whether the actions of the defendants', as alleged by Crowell, took place within the scope or course of the VFW court-martial.

Historically there has been a tendency to restrict the absolute privilege to judicial proceedings, legislative proceedings and acts of state. *Richardson v. McGill,* 273 S. C. 142, 255 S. E. (2d) 341 (1979). *But see Corbin v. Washington and Marine Ins. Co., supra.* This is so, ostensibly, because when a communication is absolutely privileged, no action will lie for its publication. *Richardson v. McGill, supra.*[1] This, however, does not answer the question of whether there is or has been a tendency to restrict the definition of "judicial proceeding" to exclude preliminary steps leading up to a formal judicial proceeding. Previous decisions of our Supreme Court have afforded the privilege to pleadings, affidavits sworn before a magistrate and letters between counsel in litigation.[2] There have been, however, no decisions pertaining to depositions, briefs or informal affidavits sworn to before someone other than an officer of the court. We hold the absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it. *Cf.* Restatement (Second) of Torts Section 587 comment e (1977).

The record reflects no statements by H. Herring outside his testimony at the court-martial hearing itself. Summary judgment was, therefore, appropriate because H. Herring's statements at the court martial proceeding were absolutely privileged. *Corbin.*

Crowell asserts Allen and Wilder defamed him by their

---

[1] But see footnote 3 *infra.*

[2] Respectively *McKesson & Robbins v. Newsome,* 206 S.C. 269, 33 S.E. (2d) 585 (1945), *Sanders v. Rollinson,* 2 Strob. 447 (1848) and *Rodgers v. Wise,* 193 S.C. 5, 7 S.E. (2d) 517 (1940).

actions as members of the investigating committee, as trustees of the VFW, statements each made during the court-martial proceeding and statements each made during their respective depositions.

First, we hold the testimony of Wilder and Allen during the court-martial proceeding is absolutely privileged under *Corbin*. Also statements, relevant to the matter involving Crowell, made during Allen and Wilder's depositions, are likewise protected. Court-martials, like judicial proceedings, need evidence and the assemblage of evidence, particularly via the recognized process of depositions, is protected. *Corbin*.

This leaves us with the statements of Allen and Wilder made as trustees and during the investigation itself. It has already been decided a court-martial is a judicial proceeding. Carrying the analogy a logical step forward, the investigation of Crowell's alleged misdeeds can be likened to a prosecutor gathering evidence, interviewing witnesses and preparing a case. Accordingly, we hold the statements made by Allen and Wilder during the course of their investigation of Crowell as trustees and as members of the investigatory committee, were absolutely privileged, inasmuch as the statements bore relation to the contemplated proceeding.

Crowell also asserts the trial court erred in granting summary judgment for Herring. Crowell alleges Herring defamed him by executing the two affidavits. Herring wrote affidavit #1 at the request of Allen, a VFW trustee and eventual investigation committee member. The question is whether the definition of "judicial proceeding" is broad enough to cover a pre-investigation affidavit by an eventual witness.

The trial court relied heavily on the fact Herring prepared affidavit #1 at the request of Allen. Affidavit #2 was requested by then VFW Post Commander Jack Tiller.[3] We are persuaded in our analysis of affidavit #1 by the case of *Rainier's Dairies v. Raritan Valley Farms*, 19 N.J. 552, 117

---

[3] Our common law preserved the distinct boundaries between actions for slander and malicious prosecution. *Vausse v. Lee, supra.* Furthermore, a distinction appears to this court between voluntary affidavits and affidavits executed during the course and scope of a judicial proceeding. *Heyward v. Cuthbert*, 4 McCord 354 (1827). Affidavit #1 was prepared voluntarily by

A. (2d) 889 (1955) in which the defendants had filed petitions with the Director of the Office of Milk Industry alleging a price fixing scheme. Each petitioner asked the Director to investigate and proceed to a formal hearing if necessary. The New Jersey Supreme Court held the petitions to investigate were absolutely privileged even though the statements were unsolicited and given prior to the institution of a formal investigation or proceeding.

The reasoning behind the decision in *Rainiers* is sound and applicable to the case at bar. The threat of a civil action in slander or libel would undoubtedly have a chilling effect on those tempted to initiate legitimate investigations or inquiries into others' supposed wrongdoings. The legitimacy of the investigations and inquiries mentioned above could then be challenged in a suit for malicious prosecution as the court in *Rainiers* and the court below held.

We hold Herring's affidavit #1 and the information supplied to the committee investigating Crowell were absolutely privileged inasmuch as the information proffered was pertinent and reasonably related to the initiation or commencement of a formal proceeding. Affidavit #2 was not actionable as slander.

## II.

Crowell also seeks review of the trial judge's decision granting defendant Herring's motion for judgment n.o.v.

The trial court granted Herring's judgment n.o.v. motion because Crowell failed to prove a want of probable cause.

In considering whether a judgment n.o.v. should be granted, all the evidence together with inferences reasonably deducible therefrom must be taken most strongly against the party asking for such a judgment and viewed in a light favorable to opponents of such motion. *Dixon v. Weir Fuel Co.*, 251 S.C. 74, 160 S.E. (2d) 194 (1968). *See also Melton v. Williams*, 281 S.C. 182, 314 S.E. (2d) 612 (Ct. App. 1984).

---

Herring and is actionable as slander, subject to the defense of absolute privilege. Affidavit #2 was executed at the request of Commander Jack Tiller in connection with the investigation of Crowell and is actionable only as malicious prosecution. *Sanders v. Rollinson, supra; Marshall v. Gunter*, 6 Rich. 419 (1853) is distinguished on its facts.

Want of probable cause is an essential element in a malicious prosecution case, and the burden of proving an absence of probable cause lies with the person bringing the claim. *Parrott v. Plowden Motor Co.*, 246 S.C. 318, 143 S.E. (2d) 607 (1965).

Probable cause means the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of a prosecuting witness, that the person charged was guilty. In making this determination, only those facts and circumstances which were or should have been known to the prosecuting witness at the time he instituted the prosecution should be considered. *Brown v. Bailey*, 215 S.C. 175, 54 S.E. (2d) 769 (1949).

While we agree with the principles in *Brown*, the facts of this case make exact application difficult.

Specifically, Herring did not institute the court-martial proceeding against Crowell. Nor was he a member of the committee which ultimately recommended court-martialing Crowell. It is difficult therefore to select a point in the history of this matter in which to judge whether Herring had probable cause. Since we are looking at the facts and inferences in a light most favorable to Crowell, we hold the earliest incident of alleged defamation is the appropriate point in which to judge probable cause. So, Crowell must bear the burden of proving Herring lacked probable cause when Herring executed his affidavit #1.

The investigation committee of the VFW charged Crowell with (1) requesting money from video machine profits for projects he did not have authority to initiate; (2) receiving funds from Hoyt's Music Co. and converting them to his own use and (3) attempting to coerce Hoyt's Music Co. into giving him two video machines for his personal use. In order to affirm the decision of the trial court we must find no evidence Crowell met his burden of proving Herring lacked probable cause in his "initiation" of proceedings against Crowell on any of the charges the VFW investigation committee brought.

We have examined this voluminous record with particularity. Though Crowell may have presented evidence he was not guilty of the charges brought, we hold he failed to present evidence Herring lacked probable cause to believe Crowell was guilty of any of the charges eventually brought against

Crowell at the time Herring prepared affidavit #1.

As *Brown* provides whether Herring had probable cause to believe Crowell was guilty of the charges brought against him is to be judged by the facts Herring had at his disposal at the time he prepared his first affidavit. Crowell, however, bore the burden of proving what Herring believed or did not believe.

The record reflects Herring knew the original (50/50) profit splitting arrangement had been changed at Crowell's request. Herring knew the new arrangement called for the VFW to receive 100 percent of the profits from the two lowest grossing machines. Herring knew several weeks later Crowell instructed him to revert to the original arrangement, a 50/50 split on all machines. Herring knew Crowell approached his father and him about purchasing video machines for his own use. Herring knew Crowell asked his father for two of Hoyt Music Co.'s locations.

Crowell offered no testimony or evidence to indicate Herring lacked probable cause. In fact, Crowell went so far as to concede Herring had probable cause when he admitted changing the new arrangement back to the old one because it might "look or smack of a kick-back."

## CONCLUSION

Based on our thorough review of the record, we hold the trial judge correctly granted the defendants' motions for summary judgment and Herring's motion for judgment n.o.v.

Affirmed.