Frank SIMON, II, Plaintiff,

v.

Jonathan NAVON, and Gershon
Navon, Defendants.

Civ. No. 92–0209–B.

United States District Court,
D. Maine.

Jan. 15, 1997.

Joseph Cloutier, C. Donald Briggs, Cloutier & Briggs, Rockport, ME, for Plaintiff.

James D. Poliquin, Norman, Hanson & Detroy, Portland, ME, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Defendant, Gershon Navon, filed a Motion for Summary Judgment requesting that the Court dismiss Plaintiff's remaining claims from this case.[1] Plaintiff, Frank Simon, II, has a pending claim for defamation against Defendant and has filed a Motion to Amend his Complaint to add a claim for malicious prosecution. The Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion to Amend.

### I. Summary Judgment

Summary judgment is appropriate in the absence of a genuine issue of any material fact, when the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Thus, summary judgment must be denied when there is a dispute as to consequential facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Menard v. First Sec. Servs. Corp.,* 848 F.2d 281, 285 (1st Cir.1988). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). An issue is genuine, for summary judgment purposes, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A material fact is one which has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). The Court views the record in the light most favorable to the nonmoving party. *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995). The Court will, therefore, assume all facts in the light most favorable to Mr. Simon.

### II. Motion to Amend

The Court usually is quite lenient in granting motions to amend under Rule 15 of the Federal Rules of Civil Procedure. *E.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (determining that amendment pursuant to Rule 15(a) should be "freely given" by the district courts.). However, this permissive standard is not unqualified. The Court stated that:

[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Id.* Thus, in cases where a motion to amend advances a legal claim, or claims, that are legally insufficient, even when assuming the facts as alleged by the movant, the motion

---

1. There was an initial trial in this case in January, 1994 where judgment was entered against the Navons for breach of contract, defamation, and abuse of process. The case was then appealed to the First Circuit, which rendered a decision in November, 1995. The Circuit reversed the trial verdict on abuse of process and vacated and remanded the verdict on the defamation claim.

should be denied. *E.g., id.; Sooner Prods. Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983) ("The grant or denial of leave to amend under Fed.R.Civ.P. 15(a) is a matter within the discretion of the trial court."); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau,* 701 F.2d 1276, 1293 (9th Cir.1983), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983) ("... futile amendments should not be permitted.").

### III. Brief Background

This case has a long history dating back to November of 1992. The legal and factual background is recounted in the Circuit Court opinion published on September 7, 1995. *See Simon v. Navon,* 71 F.3d 9 (1st Cir.1995). The specific facts pertinent to this Order are as follows.

Mr. Simon brought a claim for defamation based on three specific instances where Mr. Navon, or his representatives, allegedly communicated false statements to third parties. The first is a July 23, 1992 letter from Andrew Cadot to Camden National bank. Mr. Cadot is an attorney for Maine Coast Trading Company, Inc. (hereinafter "MCTC"). The letter states, among other things, that Mr. Simon did not have authority to make transactions from the MCTC account at Camden National Bank. Both Plaintiff and Defendant were, at one time, amicable directors of MCTC.

The second alleged defamatory statement is in an April 14, 1992 letter from Mr. Navon to Terrance Conway. Mr. Conway is the Vice President and Director of Aquacorporacion Internacional, S.A. (hereinafter "ACI"). This letter blames Mr. Simon for, among other things, breach of a December 4, 1991 contract between ACI and MCTC.

The final defamation allegation is that Mr. Navon is liable for statements that he made to creditors of MCTC. Mr. Simon claims that Mr. Navon spoke with Robert Marino, of Atlantic Foods, and Yacov Berman, Manager of an ACI aquiculture farm in Costa Rica. In both instances, Mr. Simon claims that Mr. Navon attributed MCTC's financial troubles

and its failure to meet its debts to Mr. Simon.

Mr. Simon seeks amendment of his Complaint to add a claim for malicious prosecution. In his Amended Complaint, Plaintiff asserts that Mr. Navon and his agents falsely accused him of unauthorized diversion and disposition of corporate funds, as well as other unlawful acts. The case which gives rise to this claim was a lawsuit in New York. Mr. Simon settled the claim by paying $1,200 to MCTC's bankruptcy trustee.[2]

### IV. Defamation

#### A. The Truth of the Statement

The first of the three defamatory acts specifically alleged against Mr. Navon is the July 23, 1992 letter from Andrew Cadot to Camden National bank. A statement or writing is not defamatory, however, if it is true. *E.g.,* Restatement (Second) of Torts § 581A (1977) ("One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true."). On appeal, the First Circuit resolved this issue as it relates to the Andrew Cadot letter: "We therefore conclude that the Navons met their burden of establishing that the challenged statements were true, and thus not actionable." *Simon,* 71 F.3d at 18. Plaintiff, however, apparently has not abandoned his position regarding the "untruthful factual nature of the Cadot letter." Plaintiff's Response to Motion for Summary Judgment at 10 (Nov. 8, 1996). This Court resolves the issue in accordance with the Circuit Court opinion.

Because the July 23, 1992 Cadot letter is true, it cannot be the basis of a defamation claim.

#### B. Absolute Privilege

The second alleged defamatory publication is an April 14, 1992 letter from Mr. Navon to Terrence Conway (hereinafter "Conway Letter"). Mr. Navon claims that this letter cannot be the basis for a defamation claim because it is subject to absolute privilege.

**2.** MCTC is currently in Chapter 7 bankruptcy.

■ Both parties agree that the doctrine of absolute privilege applies to defamatory statements made preliminary to or during the course of litigation. The Second Restatement of Torts states that:

[a] party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to the proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement (Second) of Torts § 587 (1977). The Maine Law Court has held that defamatory allegations made in pleadings and by witnesses who utter defamatory remarks while testifying are privileged. *E.g.*, *Dineen v. Daughan*, 381 A.2d 663, 664 (Me.1978). However, neither party cited to, and the Court has uncovered no case in Maine dealing with defamatory communications to third parties preliminary or subsequent to commencement of litigation. Both parties rely on the portion of the Restatement cited above. This reliance is supported by the practice in other jurisdictions. The Sixth Circuit, for example, cited § 587 of the Restatement in recognizing the attachment of the privilege to communications preliminary to judicial proceedings. *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1126–1127 (6th Cir.1990); *see also Sriberg v. Raymond*, 544 F.2d 15, 16–17 (1st Cir.1976) (Although *Sriberg* deals with communications by an attorney, which is not the case here, its logic applies.). The Court, therefore, concludes that in Maine the privilege attaches to communications preliminary to judicial proceedings made by attorneys and parties.

■ Although Mr. Simon agrees with this conclusion, he asserts that a party cannot exploit the privilege as an opportunity to defame because the privilege is only available when the challenged remarks are pertinent to the judicial proceeding. Mr. Simon also claims that the privilege may be lost if publi-

cation of the defamatory information is unnecessary or unreasonable. These are correct statements of the law of privilege. *See, e.g., Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me.1985); *Sriberg*, 544 F.2d at 16–17. Plaintiff, however, fails to demonstrate that the Conway Letter falls outside the parameters of communications that are granted privilege under the law.

The Conway Letter is clearly a communication made by a party preliminary to judicial proceedings. On April 9, 1992, five days before Mr. Navon sent the Conway Letter, Mr. Simon told Mr. Navon that ACI planned to file a legal claim against MCTC. Soon afterward, on April 13, 1992, ACI wrote Mr. Navon stating that it intended to hold Mr. Navon responsible for MCTC's breach of contract, threatening legal action if the alleged debts were not paid. ACI's complaint against MCTC is dated April 13, 1992 and was filed in the Lincoln County Superior Court on April 17, 1992.

The Conway Letter addresses issues specific to the Lincoln County suit. After noting that he is in receipt of the telecopies from ACI that threatened suit, Mr. Navon explains his position on the money owed by MCTC and the circumstances surrounding the alleged breach of contract. The letter is to MCTC's opponent in the Lincoln County lawsuit, and it addresses the issues in controversy. It is the very definition of communications in anticipation of litigation. Also, in sending the Conway Letter, Mr. Navon did not exploit the privilege to defame Mr. Simon, and there is no evidence on the record that the letter was distributed in a manner which was unnecessary or unreasonable. Mr. Simon was defending himself and his company in an ongoing controversy, just as the civil justice system expects and allows. The Conway Letter is protected by the absolute privilege and cannot legally be the basis for a defamation claim.[3]

---

**3.** Plaintiff also argues that Mr. Navon was not named, in his individual capacity, in the litigation discussed in the Conway Letter, hence, the privilege cannot apply. This argument is without merit. Although Mr. Navon may not have been a named party, he certainly was a party in interest. He is a director of MCTC and as such is protected by the privilege if it otherwise applies.

■ Mr. Simon's final defamation claim relates to conversations between Mr. Navon and two of MCTC's creditors, Yacov Berman and Robert Marino. Mr. Berman is an employee of ACI. The conversation between Mr. Navon and Mr. Berman, as alleged by Plaintiff, related to the controversy between ACI and MCTC, hence the same analysis applies to this conversation as applies to the Conway Letter.[4] Mr. Navon's statement falls under the absolute privilege protecting communications relating to litigation, therefore, it cannot support a defamation claim.

Plaintiff also proffers the following defamatory statement:

> Robert Marino testified to a conversation at trial where he was told that his problem in getting paid was being caused by Frank Simon and that Frank Simon was responsible for non-payment of Marino's bill.

Plaintiff's Response to Motion for Summary Judgment at 15 (Nov. 8, 1996) (citing Trial Transcript at 256–257). The record indicates that Mr. Marino was contemplating legal action against either MCTC, Mr. Navon, or both if he was not paid the amount owed him by MCTC. An April 15, 1992 letter to Mr. Navon from Mr. Marino states that "[i]f we do not receive full payment by Monday, April 21, 1992, we will have to pursue other action." Mr. Navon's statement to Mr. Marino was made in anticipation of litigation and it was not disseminated in an unnecessary or unreasonable manner. Mr. Navon told a creditor, who was threatening a collection action, his version of the facts surrounding the controversy. Such a conversation is protected from a defamation action by the absolute privilege.[5]

## V. Malicious Prosecution

■ The tort of malicious prosecution has long been recognized in Maine. *E.g., Nyer v. Carter,* 367 A.2d 1375, 1378 (Me.1977) (citing *Ulmer v. Leland,* 1 Me. 135 (1820)). To prove his claim for malicious prosecution, Mr.

Simon must show, by a preponderance of the evidence, that (a) the action was instituted or continued against the Plaintiff without probable cause; (b) the Defendants brought the action with malice; and (c) Plaintiff received favorable termination of the proceedings. *Gray v. State,* 624 A.2d 479, 483 (Me.1993); *Price v. Patterson,* 606 A.2d 783, 785–786 (Me.1992); *Nadeau v. State,* 395 A.2d 107, 116 (Me.1978).

■ In this case Mr. Simon fails to meet the third requirement of this tort. The underlying suit that he alleges Mr. Navon brought without probable cause and with malice was not terminated in his favor. A leading authority on tort law summarizes this prong of the legal test stating that:

> [a]s in the case of criminal proceedings, a termination of the suit by way of compromise and settlement is not sufficient to support the cause of action.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 120, at 892 (5th Ed.1984). A settlement is not, as a matter of law, a favorable termination of the proceedings sufficient to form the basis for a subsequent malicious prosecution action. *See, e.g., Marks v. Gray,* 42 Me. 86, 89 (1856).

MCTC's trustee gave interested parties an opportunity to bid for the claims against Mr. Simon, and, although Mr. Navon also bid on the claims, Mr. Simon's bid was the highest and was accepted by the trustee. Mr. Simon, soon thereafter, obtained a release from the New York suit. In essence, Mr. Simon paid the trustee in order to resolve the New York civil action. He bought the claims against him. This is not a favorable termination of the proceedings, as this phrase is used in the law.

■ In cases where a Motion to Amend advances a claim that is legally insufficient on its face, the default rule that amendments be freely allowed is overridden, and the mo-

---

4. Plaintiff claims that:
Yacov Berman informed Gershon Navon that ACI was in dire need of money and needed payment on the outstanding balance or there would be no money to feed the fish, only to be told that Frank Simon held the money which was why ACI was not paid.

Plaintiff's Response to Motion for Summary Judgment at 16 (Nov. 8, 1996) (citing Trial Transcript at 289).

5. Given the Court's findings, the parties' arguments regarding consent and the Workers' Compensation Act are moot.

tion can be denied. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Sooner Prods. Co.,* 708 F.2d at 512; *Klamath–Lake Pharmaceutical Ass'n,* 701 F.2d at 1293. The Court hereby determines that the underlying facts and circumstances surrounding the claims made in Plaintiff's Motion to Amend are legally insufficient to support the relief sought, therefore, the Motion is denied.

## VI. Conclusion

Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's defamation claims are dismissed and Plaintiff's Motion to Amend is DENIED.[6] As no viable claims remain, this case is dismissed.

*SO ORDERED.*

---

**6.** Plaintiff's claim for punitive damages is also dismissed because no predicate tort remains in the case.