566 S.E.2d 595

**John COLLINS and Debbie Southworth Plaintiffs,**

v.

**RED ROOF INNS, INC., Defendant.**

No. 30112.

Supreme Court of Appeals of West Virginia.

Submitted April 3, 2002.

Decided June 7, 2002.

J. Michael Ranson, Cynthia M. Ranson, Christie S. Utt, Ranson Law Offices, Charleston, for the Plaintiffs.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, for the Defendant.

DAVIS, Chief Justice:

The question herein certified by the United States District Court for the Southern District of West Virginia asks whether defamatory matter published preliminary to the filing of a judicial action, and involving a person who is not a party to the dispute, is absolutely privileged. We conclude that an absolute privilege applies to defamatory statements uttered prior to the commencement of a judicial action, even when the subject of the defamatory comments is a third person, but only within the specific

limitations set forth in the body of this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1999, Red Roof Inns, Inc.,[1] the defendant (hereinafter "Red Roof"), underwent a restructuring. As a part of the restructuring, various employees either voluntarily or involuntarily terminated their employment. Also in connection with this restructuring, Red Roof implemented a "Change in Control Severance Plan" (hereinafter "Severance Plan").[2]

Plaintiffs John Collins[3] and Debbie Southworth[4] are former employees of Red Roof. Prior to October, 1999, each was employed as a vice president of operations (hereinafter VPO). On October 5, 1999, Debbie Southworth and Red Roof entered into a mutual severance pay agreement pursuant to Red Roof's Severance Plan. John Collins entered into a similar agreement with Red Roof on October 8, 1999. According to Red Roof, as a result of these agreements, Ms. Southworth's and Mr. Collins' employment was terminated by Red Roof in exchange for a lump-sum payment and certain additional benefits as provided for in the severance plan. On the contrary, Ms. Southworth and Mr. Collins contend that their employment was not terminated. Rather, they insist that they each voluntarily resigned.

Thereafter, on October 11, 1999, Andrew D. Bensabat, who is not a party to the instant litigation, resigned from his position of VPO with Red Roof and claimed his entitlement to benefits under the severance plan.[5] Upon being informed that he would not receive severance plan benefits from Red Roof, Mr. Bensabat retained a lawyer who corresponded with Red Roof demanding such benefits for his client and stating:

> You are advised that should the company fail to pay Mr. Bensabat the benefits due him under the severance plan within five (5) business days from the date appearing above, it is my intention to exhaust the appeals remedy provided for in the severance plan and, if necessary, to pursue an action in the United States District Court to recover the benefits, as well as prejudgment interest and attorney's fees. . . .

Mr. Emmett J. Gossen, Jr., who at all times relevant to this case was the executive vice president of Red Roof,[6] replied by correspondence dated October 27, 1999. Mr. Gossen denied that Mr. Bensabat was entitled to any benefits under the severance plan, and referred Mr. Bensabat's lawyer to the appeal process designated in the plan. Mr. Bensabat, then utilized the Severance Plan's procedures to appeal the decision denying him severance benefits. In connection with his appeal, Mr. Bensabat made the following assertions:

> we note that the Plan Administrator has approved the payment of benefits to similarly-situated VPOs who have resigned from their employment with Red Roof Inns. It is our understanding that former VPO John Collins [chose] to pursue other business opportunities and was given the full measure of benefits available under the Plan. Likewise, we understand that Debbie

---

1. Red Roof Inns, Inc., is a Delaware corporation with its principal place of business located in Dallas, Texas.

2. The Severance Plan, which falls within the meaning of a severance plan pursuant to Section 3(2)(B)(i) of the Employee Retirement Income Security Program (hereinafter "ERISA"), see 29 USC § 1002(2)(B)(i) (1997) (2000 ed.), is intended to be excepted from the definitions of an employee pension benefits plan and pension plan set forth under Section 3(2) of ERISA, see 29 USC § 1002(2), and is intended to meet the description requirements of a plan constituting a severance plan within the meaning of regulations published by the Secretary of Labor at Title 29,

Code of Federal Regulations, Section 2510.3–2(b).

3. John Collins is a resident of Hurricane, West Virginia.

4. Debbie Southworth is a resident of Alpharetta, Georgia.

5. Andrew D. Bensabat is apparently a resident of Tampa, Florida.

6. As permitted by the Severance Plan, Mr. Gossen had been designated to act on behalf of the plan administrator.

Southworth, another former VPO, resigned from her employment, citing her discomfort with the changes initiated by the new management group. She likewise received benefits under the Plan. We further understand that other present and former employees have either been promised benefits under the Plan or have actually [ ] received such benefits despite the fact that they were not made "redundant" as a result of the change in control. The conduct of the Plan Administrator in granting benefits to others who are similarly situated to Mr. Bensabat and denying Mr. Bensabat's valid application for benefits constitutes arbitrary and capricious conduct on the part of the Administrator....

With respect to its appeal process, Red Roof's severance plan expressly states that

[w]ithin thirty (30) days after receipt of a written appeal ..., the Plan Administrator shall notify the Employee of the final decision. The final decision shall be in writing and *shall include specific reasons for the decision,* written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions on which the decision is based.

(Emphasis added). Mr. Gossen, by written correspondence dated December 1, 1999, notified Mr. Bensabat that his appeal had been denied and stated, in relevant part:

Your assertion that the Plan Administrator acted in an "arbitrary and capricious" manner with regard to benefits afforded to John Collins and Debbie Southworth is simply wrong on the facts. Collins and Southworth were terminated, of their employer's own motion, based on factors relating to evaluation of their performance and potential future contribution. The fact that either may have wished to be fired, for whatever personal reason of their own, is simply irrelevant. The Change of Status form for each reflects "Discharge", which is what occurred. Facts leading to that discharge did not, in our judgement, rise to the level of "Cause" as defined in Sec. 1.3(a) of the Plan, and accordingly we treated these terminations as redundancies....

The parties to the instant suit have stipulated that Red Roof did not publish or cause to be published the above-quoted statements other than to forward the letter containing the statements to Mr. Bensabat's lawyer. Either Mr. Bensabat's lawyer, or Mr. Bensabat himself, subsequently notified John Collins and Debbie Southworth of the comments noted above.

In December 1999, Mr. Bensabat filed suit against Red Roof alleging, *inter alia,* that Red Roof had improperly failed to provide him benefits under the severance plan. By order entered April 19, 2001, the United States District Court for the Middle District of Florida, Tampa Division, found in favor of Red Roof.

After learning of Red Roof's assertion that they were terminated, John Collins and Debbie Southworth filed the instant law suit against Red Roof in the Circuit Court of Kanawha County alleging defamation of character. Mr. Collins and Ms. Southworth contend that they voluntarily resigned from their employment with Red Roof and were not terminated as Red Roof declared to Mr. Bensabat. Red Roof removed the case to the United States District Court for the Southern District of West Virginia (hereinafter District Court) on diversity of citizenship grounds. Among its defenses to this action, Red Roof asserts that it was absolutely privileged to publish its statements about John Collins and Debbie Southworth. After receiving a motion to dismiss filed by Red Roof, and Mr. Collins' and Ms. Southworth's response to that motion, the District Court proposed to certify a question to this Court regarding the applicability of an absolute privilege to the facts of this case. Thereafter, the District Court concluded that certification to this Court was appropriate and just, and certified the following question:

Whether an individual or entity is absolutely privileged to publish defamatory matter to another individual or entity, when such defamatory statement is preliminary to the filing of a Complaint in the matter but the statement is relevant to a proceeding which is seriously contemplated and when the subject of such defamatory matter is third persons who would not be

parties to the litigation that was contemplated?

## II.

## STANDARD OF REVIEW

■ " 'This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.' Syllabus point 1, *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999)." Syl. pt. 1, *In re Sorsby*, 210 W.Va. 708, 559 S.E.2d 45 (2001).

## III.

## CERTIFIED QUESTION

■ This Court possesses the authority to reformulate certified questions. *See* W. Va. Code § 51–1A–4 (1996) (Repl.Vol.2000) ("The [S]upreme [C]ourt of [A]ppeals of West Virginia may reformulate a question certified to it."). In accordance with this authority, we reformulate the instant question as follows:

Is a party to a dispute absolutely privileged to publish to the opposing party involved in the dispute defamatory matter regarding a third person where no judicial action is presently pending, but where a judicial action is contemplated in good faith and is under serious consideration, and where the defamatory statement is related to the proposed judicial proceeding?

For the reasons that follow, we answer this question in the affirmative.

## IV.

## DISCUSSION

The question presented in this case is expressly addressed in the Restatement (Second) of Torts § 587 (1977), which states:

A party to private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

■ To determine whether we should adopt this provision as it relates to the publication of defamatory matter preliminary to a proposed judicial proceeding, we begin our analysis by briefly reviewing the meaning and scope of the term "absolute privilege." We have previously acknowledged that

[a]n absolute privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously.

*Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 706, 320 S.E.2d 70, 78 (1983) (quoting *City of Mullens v. Davidson*, 133 W.Va. 557, 563, 57 S.E.2d 1, 6 (1949) (quoting, 33 Am.Jur. *Libel and Slander* § 125)). Because an absolute privilege removes all possibility of remedy for a wrong that may even be committed with malice, such a privilege is permitted only in limited circumstances. In this respect, the *Crump* Court observed:

The scope of absolute privilege is confined within fairly narrow limits. "With a few exceptions ... absolutely privileged communications are limited to legislative, judicial and quasi-judicial proceedings and other acts of the State." *Parker v. Appalachian Electric Power Co.*, 126 W.Va. 666, 672, 30 S.E.2d 1, 4 (1944). Absolute privilege situations also include (1) where a plaintiff has consented to the defamation or instigated the publication of defamatory statements, *see, e.g., Walters v. Linhof,* 559 F.Supp. 1231 (D.Colo.1983); *Johnson v. Buckner,* 610 S.W.2d 406 (Mo.App. 1980); *Hollowell v. Career Decisions, Inc.,* 100 Mich.App. 561, 298 N.W.2d 915 (1980); (2) where the broadcast of statements made by political candidates is involved, *see Farmers Educational and Co-op. Union of America v. WDAY, Inc.,* 360 U.S. 525, 79 S.Ct. 1302, 3 L.Ed.2d 1407 (1959); and (3) where a petitioning of the government for a redress of grievances protected by the first amendment is involved, *see*

*Webb v. Fury,* 167 W.Va. 434, 282 S.E.2d 28 (W.Va.1981).

*Crump,* 173 W.Va. at 706–07, 320 S.E.2d at 78. The foundation for the absolute privilege described in the question here certified arises in connection with a judicial proceeding. The Restatement provides the justification for this privilege thusly:

The privilege stated in this Section [§ 587] is based upon the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes. Like the privilege of an attorney, it is absolute. It protects a party to a private litigation or a private prosecutor in a criminal prosecution from liability for defamation irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity. One against whom civil or criminal proceedings are initiated may recover in an action for the wrongful initiation of the proceedings, under the rules stated in §§ 674 to 680, if the proceedings have terminated in his favor and were initiated without probable cause and for an improper purpose.

Restatement (Second) of Torts § 587 cmt. *a.* Here, however, we are asked to adopt that portion of the Restatement allowing an absolute privilege to attach to comments made *preliminary* to a judicial proceeding, so long as the proceeding is "contemplated in good faith and under serious consideration." Restatement (Second) of Torts § 587 cmt. *e.* Because this is a question that has not previously been addressed by this Court, we first look to how other courts have addressed the general question of whether an absolute privilege may attach at a pre-litigation stage.

The Supreme Court of Oklahoma, for example, in *Samson Investment Co. v. Chevaillier,* 1999 OK 19, 988 P.2d 327 (1999), applied the privilege, which had earlier been adopted in that state,[7] to comments made by attorneys[8] in a *draft* of a petition for a lawsuit

that was circulated to a *prospective* client. The Oklahoma court observed that

"[t]he litigation privilege is not limited to statements made in a courtroom during a trial; 'it extends to all statements or communications in connection with the judicial proceeding' " '. . . It extends to *preliminary conversations* and interviews between prospective witnesses and an attorney as long as the communications are related to the prospective judicial action.

*Samson,* 1999 OK at ——, 988 P.2d at 331 (emphasis added) (quoting *Hawkins v. Harris,* 141 N.J. 207, 215–16, 661 A.2d 284, 289 (1995) (additional internal citation omitted)). In response to the plaintiff's argument that the absolute privilege should not attach where there is no attorney/client relationship in place, the court found that the existence of an attorney/client relationship was not required and commented "[t]he purpose behind the litigation privilege of permitting open communication to facilitate 'the right of access to judicial and quasi-judicial proceedings' . . . would be thwarted if [the plaintiff's] argument was adopted." *Id.,* 1999 OK at ——, 988 P.2d at 331 (citation omitted).

Similarly, in *Crowell v. Herring,* 301 S.C. 424, 392 S.E.2d 464 (1990) (per curiam), Crowell, a member of the Veterans of Foreign Wars (hereinafter "the VFW"), instituted a defamation action against various individuals who had provided information to the VFW indicating that he had acted unlawfully. Pertinent to our analysis, some of the defamatory statements were made before any action was taken against Crowell. These comments actually led to the investigation into Crowell's conduct that ultimately resulted in a court-martial. Crowell was eventually acquitted of all the charges. The trial judge presiding over Crowell's subsequent defamation action granted summary judgment to the defendants after finding their statements regarding Crowell's alleged activity were absolutely privileged. Affirming the trial court's decision, the Court of Appeals of South Car-

---

7. *See Kirschstein v. Haynes,* 1990 OK 8, 788 P.2d 941 (1990).

8. Although the defamatory matter in *Samson* was published by a lawyer, we find the analysis instructive to the issue before us as the privilege

extended to lawyers by the Restatement is nearly identical to that offered to parties. *Compare* Restatement (Second) of Torts § 586 (1977) (privilege to lawyers), *with* Restatement (Second) of Torts § 587 (privilege to parties).

olina held "the absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, *including preliminary steps leading to judicial action of any official nature* provided those steps bear reasonable relation to it." *Crowell*, 301 S.C. at 430, 392 S.E.2d at 467 (citing the Restatement (Second) of Torts § 587 cmt. *e* ). In deciding that this holding applied to defamatory statements published even prior to an investigation of wrongdoing, the South Carolina Court relied on rationale contained in the New Jersey case of *Rainier's Dairies v. Raritan Valley Farms*, 19 N.J. 552, 117 A.2d 889 (1955), and explained:

> The threat of a civil action in slander or libel would undoubtedly have a chilling effect on those tempted to initiate legitimate investigations or inquiries into others' supposed wrongdoings. The legitimacy of the investigations and inquiries mentioned above could then be challenged in a suit for malicious prosecution as the court in *Rainer's* and the court below held.

*Crowell*, 301 S.C. at 432, 392 S.E.2d at 468.

Another similar case has been decided by the Court of Appeals of North Carolina. *Harris v. NCNB Nat'l Bank of North Carolina*, 85 N.C.App. 669, 355 S.E.2d 838 (1987). *Harris* involved a dispute between a bank and a credit association over the sale of farm equipment in which both the bank and the credit association claimed a security interest. At some point during the dispute, but prior to the instigation of a judicial proceeding, a lawyer acting for the bank sent a letter and copy of an unfiled complaint to the credit association. *Harris*, 85 N.C.App. at 671, 355 S.E.2d at 841. The unfiled complaint

> alleged facts relating to the dispute existing between [the bank and the credit association] and alleged that [Harris, an employee of the credit association,] had made false statements to the debtor, the owner of the equipment, and to [the bank] concerning the sale of the equipment and the disbursement of the proceeds thereof, and had committed unfair or deceptive acts affecting commerce in violation of [the law].

*Id.*, 85 N.C.App. at 671–72, 355 S.E.2d at 841. The letter stated that the complaint would be filed unless the credit association took specific action requested by the bank. Harris subsequently filed a defamation action against the bank seeking damages for the disparaging allegations against him that were made in the unfiled complaint. The trial court dismissed Harris' suit for failure to state a claim for which relief could be granted. In affirming the trial court's dismissal, the Court of Appeals adopted the rule that "an absolute privilege exists not only with respect to statements made in the course of a pending judicial proceeding but also with respect to communications relevant to [a] *proposed* judicial proceeding." *Harris*, 85 N.C.App. at 674, 355 S.E.2d at 842 (emphasis added). The *Harris* court further noted that its

> holding is in harmony with those of numerous other jurisdictions which have extended the protection of absolute privilege to relevant communications made *preliminary to proposed litigation* either by statute or by recognition of the Restatement view. *See, e.g., Lerette v. Dean Witter Organization, Inc.*, 60 Cal.App.3d 573, 131 Cal.Rptr. 592 (2d Dist.1976); *Club Valencia Homeowners Ass'n v. Valencia Assoc.*, 712 P.2d 1024 (Colo.App.1985); *Irwin v. Cohen*, 40 Conn.Supp. 259, 490 A.2d 552 (1985); *Libco Corp. v. Adams*, 100 Ill. App.3d 314, 55 Ill.Dec. 805, 426 N.E.2d 1130 (1981); *Sriberg v. Raymond*, 370 Mass. 105, 345 N.E.2d 882(1976); *Rodgers v. Wise*, 193 S.C. 5, 7 S.E.2d 517 (1940); *Russell v. Clark*, 620 S.W.2d 865, 23 A.L.R.4th 924 (Tex.Civ.App.1981); Annot, 23 A.L.R.4th 932 (1983). *See also Johnston v. Cartwright*, 355 F.2d 32, (8th Cir. 1966) (applying Iowa law); *Richeson v. Kessler*, 73 Idaho 548, 255 P.2d 707 (1953); *Bull v. McCuskey*, 96 Nev. 706, 615 P.2d 957 (1980); *Penny v. Sherman*, 101 N.M. 517, 684 P.2d 1182, *cert. denied*, 101 N.M. 555, 685 P.2d 963 (1984); *Cummings v. Kirby*, 216 Neb. 314, 343 N.W.2d 747 (1984).

*Id.* at 674–75, 355 S.E.2d at 843 (first emphasis added).

While the cases discussed above apply an absolute privilege to defamatory material published preliminary to anticipated judicial proceedings generally, the question certified to this Court asks the specific question of whether such a privilege applies when the subject of the defamatory comment is a third person who is not a party to the prospective judicial proceeding. To answer this aspect of the certified question, we again turn to the purpose for allowing an absolute privilege in connection with judicial proceedings.

As we previously noted, comment *a* to the Restatement (Second) of Torts § 587 explains that the rationale for such a privilege has its foundation in the assurance to all people of free access to the courts. *See Harris*, 85 N.C.App. 669, 674, 355 S.E.2d 838, 842 ("[T]he privilege is based upon the public interest of securing to all persons freedom of access to the courts to settle their private disputes ...."). It has also been explained that:

> The reason for the absolute privilege accorded defamatory communications made in the course of judicial proceedings is one of public policy, the underlying rationale being that such a privilege is necessary to the proper administration of justice; if the judicial process is to function effectively, those who participate must be able to do so without being hampered by the fear of private suits for defamation. Furthermore, it has been said that the public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy where he or she has been wronged thereby.

50 Am.Jur.2d, *Libel and Slander* § 299, at 591 (1995) (footnotes omitted). *See also Defend v. Lascelles*, 149 Ill.App.3d 630, 636, 102 Ill.Dec. 819, 823, 500 N.E.2d 712, 716 (1986) (noting that an absolute privilege is "based upon the public interest of encouraging access to the court system while facilitating the truth-seeking process therein."). It does not appear that this rationale lends itself to an interpretation limiting the application of the privilege only to defamatory comments made about another party. Certainly an individual's right to defend him or herself against a legal action should not be limited by the fear of liability for defamation simply because his or her defense involves a third person rather than a party. Indeed, the very terms § 587 of the Restatement are not limited to comments regarding other parties, but instead grant an absolute privilege to "publish defamatory matter concerning *another* in communications preliminary to a proposed judicial proceeding." (Emphasis added). *See also* 12A Michie's Jurisprudence, *Libel and Slander* § 19, at 91 (1989) ("If the parties are to be placed in fear of suits for libel or slander for reflections cast upon the parties *or others*, ... then the trial of civil suits would be far less likely to lead to correct results than where this embarrassment is not felt."). At least one court has also explained that the privilege is necessary to permit proper investigation of potential claims:

> [A]n insurance company or anyone facing a claim involving personal injury[ ] should have the right to initiate legitimate investigations and inquiries into those alleged personal injuries prior to the commencement of a lawsuit. If a difference of opinion is going to bring about a defamation cause of action, there will be a chilling effect upon a party's ability to initiate legitimate inquiries and also upon a medical provider's ability to render contradictory, but needed, second opinions.

*Woodward v. Weiss*, 932 F.Supp. 723, 728 (D.S.C.1996).

We find further support for applying an absolute privilege to pre-litigation defamatory matter involving third parties in cases from other jurisdictions. The United States District Court for the District of Maine has applied such a privilege. *Simon v. Navon*, 951 F.Supp. 279 (1997). In this case, Simon sued Navon for allegedly defamatory statements made to business associates of a company, Maine Coast Trading Company, Inc. (hereinafter "MCTC"), for which both men had once served as director. At a time when MCTC was experiencing financial and other troubles, and had been warned that law suits would soon be filed against it, Mr. Navon

made various statements effectively blaming Mr. Simon for MCTC's problems. *Simon,* 951 F.Supp. at 281. Because the comments were published to those who had threatened MCTC with law suits, the *Simon* court found the statements by Navon were absolutely privileged. *Id.* at 282. We find nothing in the court's opinion indicating that Mr. Simon was expected to be a named party to any of the threatened lawsuits.

In *Woodward v. Weiss,* 932 F.Supp. 723, the United States District Court applied an absolute privilege to comments made by a prospective witness [9] regarding a physician who was not a party to the anticipated litigation. The plaintiff in *Woodward* was the treating physician of three individuals who had been injured in accidents and filed claims against State Farm Insurance Company (hereinafter "State Farm"). State Farm asked another physician to review and evaluate these individuals' medical records. The evaluating physician, Dr. Weiss, in reports he submitted only to State Farm, "disagreed with Dr. Woodward's treatment and questioned whether the injuries claimed were related to the accidents." *Woodward,* 932 F.Supp. at 725. Applying South Carolina law, the district court concluded that Dr. Weiss' reports "were rendered as a preliminary step to a judicial proceeding which bore a reasonable relation to litigation, and they are therefore absolutely privileged." *Id.* at 727.

Finally, we note that in our consideration of whether communications preliminary to a proposed judicial proceeding should be afforded an absolute privilege, we have been most concerned by the fact that certain protections against the misuse of an absolute privilege asserted in connection with an ongoing judicial action would not be present at the preliminary stage.[10] However, many of the courts adopting or applying such a privilege have specifically acknowledged that an absolute privilege that attaches preliminary to a judicial proceeding is not without limitation and does not provide complete freedom to defame with impunity.

For example, one court has cautioned that even though the privilege applies to false communications, it "does not give free reign to attorneys to defame; rather the litigation privilege applies only when the communication is (1) relevant or has some relation to a proposed proceeding and (2) circumstances surrounding the communication have some relation to the proposed proceeding." *Samson Inv. Co. v. Chevaillier,* 1999 OK 19, ——, 988 P.2d 327, 330 (citation omitted). *See also Simon v. Navon,* 951 F.Supp. 279, 282 ("[A] party cannot exploit the privilege as an opportunity to defame because the privilege is only available when the challenged remarks are pertinent to the [proposed] judicial proceeding.... [T]he privilege may be lost if publication of the defamatory information is unnecessary or unreasonable."); *Blevins v. W.F. Barnes Corp.,* 768 So.2d 386, 393 (Ala. Civ.App.1999) (concluding that libelous statements to state attorney general were not privileged because they were not material to proposed litigation); *Harris v. NCNB Nat'l Bank of North Carolina,* 85 N.C.App. 669, 675, 355 S.E.2d 838, 843 (noting, in applying absolute privilege to pre-litigation publication of defamatory matter, that "[t]he statements were clearly relevant to the issues and subject matter of the anticipated litigation, as disclosed by the unfiled complaint, in that the statements expressed the legal and factual reasons for NCNB's position with respect thereto.").

---

9. Although the defamatory matter in *Woodward* was published by a prospective witness, we find the analysis instructive to the issue before us as the privilege extended to witnesses by the Restatement is nearly identical to that offered to parties. *Compare* Restatement (Second) of Torts § 588 (1977) (privilege to witnesses), *with* Restatement (Second) of Torts § 587 (privilege to parties).

10. The protections we refer to include accountability in the form of: (1) criminal liability for perjury, *see* W. Va.Code § 61–5–1 (1996) (Repl. Vol.2000) ("Perjury and subornation of perjury defined"); (2) criminal liability for false swearing, *see* W. Va.Code § 61–5–2 (1923) (Repl.Vol. 2000) ("False swearing defined"); (3) criminal liability for contempt of court, *see* W. Va.Code § 61–5–26 (1923) (Repl.Vol.2000); (4) sanctions for making representations to the court that have no evidentiary support, *see* Rule 11, W. Va. R. Civ. P.; (5) civil liability for malicious prosecution.

In addition to limiting the topic of a privileged defamatory statement to those directly related to a proposed proceeding, it has also been held that the disclosure must be made only to certain interested persons. In *Gardner v. Senior Living Systems, Inc.*, 314 Ill. App.3d 114, 246 Ill.Dec. 822, 731 N.E.2d 350 (2000), it was determined that defamatory comments published prior to anticipated litigation between and employer and its former employee were not privileged because the comments were made to clients of the employer who had no relation to the proposed lawsuit. *See also Harris v. NCNB Nat'l Bank of North Carolina*, 85 N.C.App. at 675, 355 S.E.2d at 843 (finding absolute privilege for pre-litigation statements "published by the attorney for one party to the proposed suit to an attorney for another named party which unquestionably had an interest in the controversy.").

Lastly, we note that, in addition to the aforementioned constraints on a pre-litigation absolute privilege, the privilege attaches only when it is demonstrated that the defamatory matter was indeed published in anticipation of seriously considered litigation. The Restatement defines what is meant by its reference to communications "preliminary to a proposed judicial proceeding" as follows:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is *contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.*

Restatement (Second) Torts § 587, cmt. *e* (emphasis added).

Based upon our discussion above, we hold that prior to the filing of a prospective judicial proceeding, a party to a dispute is absolutely privileged to publish defamatory matter about a third person who is not a party to the dispute only when (1) the prospective judicial action is contemplated in good faith and is under serious consideration; (2) the defamatory statement is related to the prospective judicial proceeding; and (3) the de-

famatory matter is published only to persons with an interest in the prospective judicial proceeding.

### IV.

### CONCLUSION

As set forth in the body of this opinion, the certified question is answered in the positive.

Certified question answered.