624 S.E.2d 864

Carolyn CLARK, M.D., Plaintiff
Below, Respondent,

v.

William DRUCKMAN; Salsbery & Druck-
man, a West Virginia Partnership;
Richard Lindsay; Tabor, Lindsay & As-
sociates, a West Virginia Partnership;
and Frederick Delp Defendants Below,
Petitioners

and

Carolyn Clark, M.D., Plaintiff
Below, Petitioner,

v.

William Druckman; Salsbery & Druck-
man, a West Virginia Partnership;
Richard Lindsay; Tabor, Lindsay & As-
sociates, a West Virginia Partnership;
and Frederick Delp Defendants Below,
Respondents.

No. 32576, 32577.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 2005.

Decided Nov. 30, 2005.

D.C. Offutt, Jr., Offutt, Fisher & Nord, Jack H. Vital, III, Lockwood and Vital, Huntington, for Carolyn Clark, M.D.

---

Stephen B. Farmer, Christopher. S. Arnold, Stacy A. Jacques, Farmer, Cline & Campbell, PLLC, Charleston, for William S. Druckman and Salsbery & Druckman, a West Virginia Partnership.

James S. Varner, Sr., James N. Riley, Debra Herron, McNeer, Highland, McMunn, & Varner, Clarksburg, for Richard Lindsay and Tabor Lindsay & Associates, a West Virginia Partnership.

Richard W. Stuhr, Colombo & Stuhr, Co., L.P.A., Worthington, OH, Timothy R. Lin-

kous, Colomo & Stuhr, P.L.L.C., Morganton, for Amicus Curiae Debra Sams, D.O.

Justice BENJAMIN delivered the opinion of the Court.

BENJAMIN, Justice:

This matter is presented to us upon certified questions presented by the Circuit Court of Cabell County pursuant to W. Va.Code § 58–5–2 (1998).[1] The underlying tort action arises from claims asserted by a physician against the attorneys who brought a medical malpractice action against the physician on behalf of a former patient of the physician. The certified questions presented relate to the duty of care, if any, an opposing counsel owes a party and the scope of the litigation privilege in West Virginia. Having determined that "there is a sufficiently precise and undisputed factual record on which the legal issues can be determined" and that those issues substantially control the case, we will address the issues presented. Syl. Pt. 5, in part, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994).

## I.

### FACTS AND PROCEDURAL HISTORY

On December 5, 2002, Carolyn Clark, M.D. ["Dr. Clark"] filed a complaint in the Circuit Court of Cabell County, West Virginia, being civil action number 02–C–1002, against William S. Druckman, Salsbery and Druckman, a West Virginia partnership,[2] Richard Lindsay, Tabor Lindsay & Associates, a West Virginia partnership,[3] and Frederick L. Delp.[4] Druckman and Lindsay are the former counsel for Amy and Roy Dempsey. Druckman and Lindsay filed a medical professional negligence action against Dr. Clark on behalf of the Dempseys in the Circuit Court of Kanawha County, West Virginia in November 1999 arising from an alleged failure to timely diagnose an aggressive form of breast cancer in Mrs. Dempsey. Frederick L. Delp replaced Druckman and Lindsay as counsel for the Estate of Amy Dempsey[5] after Druckman and Lindsay were permitted to withdraw as counsel in February 2001. Thereafter, the *Dempsey* action was voluntarily dismissed, with prejudice, on December 7, 2001. Nearly one year later, Dr. Clark filed her complaint against Druckman, Lindsay and Delp asserting claims of negligence, intentional infliction of emotional distress, tortious interference with Dr. Clark's business relationship with her insurance carrier and malicious prosecution. Dr. Clark sought compensatory and punitive damages arising from the filing and prosecution of the *Dempsey* action.

Having conceded that probable cause existed to initially file the action against her, Dr. Clark focuses her claims on the disclosure of expert witnesses regarding causation and the applicable standard of care in the *Dempsey* action. In September 2000, Druckman filed Plaintiff's Initial Disclosure of Expert Witnesses in the *Dempsey* action, disclosing David M. Burkons, M.D., and Melvin Ravitz, M.D., as experts "regarding the negligence of the defendants" and Barry Singer, M.D. and Lee Levitt, M.D. as experts regarding causation and damages. The disclosure noted that these witnesses "may be

1. W. Va.Code § 58–5–2 provides:

    Any question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appel-

    late procedure promulgated by the supreme court of appeals.

2. Hereinafter, William S. Druckman and Salsbery and Druckman, a West Virginia partnership shall be collectively referred to as "Druckman."

3. Richard Lindsay and Tabor Lindsay & Associates, a West Virginia partnership, shall, hereinafter, be collectively referred to as "Lindsay."

4. Mr. Delp has not made an appearance before this Court.

5. Amy Dempsey succumbed to breast cancer on November 25, 2000. Her mother, Linda Smith, continued the action against Dr. Clark in her capacity as Executrix of the Estate of Amy Dempsey.

used at the trial of [the *Dempsey* ] matter." It does not appear from the record before this Court that Dr. Clark made any attempt to depose these experts or otherwise discover their opinions prior to the withdrawal of Druckman and Lindsay in February 2001. At a July 6, 2001 hearing, Mr. Delp appeared as replacement counsel for the Estate of Amy Dempsey. At that hearing, the court, on its own initiative, scheduled a statutory status conference for August 31, 2001.[6] Prior to the mandatory status conference, Mr. Delp re-disclosed the experts previously disclosed by Druckman and Lindsay on August 24, 2001. Dr. Clark claims that neither Druckman and Lindsay nor Mr. Delp actually contacted these experts prior to their disclosure.

After certain discovery, Druckman and Lindsay filed motions for summary judgment on September 15, 2004 and September 20, 2004 respectively.[7] In their motions, Druckman and Lindsay argued the litigation privilege bars civil actions against lawyers for damages arising from litigation conduct. In response, Dr. Clark argued that the litigation privilege is restricted to claims of defamation, relating solely to communications and not conduct. During an October 6, 2004, hearing on the motions, the circuit court and counsel for the parties decided to certify certain questions of law governing resolution of Dr. Clark's claims to this Court. A second hearing was held on October 20, 2004, during which counsel presented oral arguments regarding the issues to be certified. By Order

---

6. Pursuant to W. Va.Code § 55–7B–6(a) (1986), which was in effect at the time the *Dempsey* action was filed, a status conference to determine the status of discovery and the need for expert witnesses regarding the applicable standard of care was required. Specifically, W. Va.Code § 55–7B–6 (a) (1986), provided:

> In each medical professional liability action against a health care provider, not less than nine months nor more than twelve months following the filing of answer by all defendants, a mandatory status conference shall be held at which, in addition to any matters otherwise required, the parties shall:
> (1) Inform the court as to the status of the action, particularly as to the identification of contested facts and issues and the progress of discovery and the period of time for, and nature of, anticipated discovery; and
> (2) On behalf of the plaintiff, certify to the court that either an expert witness has or will be retained to testify on behalf of the plaintiff as to the applicable standard of care or that under the alleged facts of the action, no expert witness will be required. If the court determines that expert testimony will be required, the court shall provide a reasonable period of time for obtaining an expert witness and the action shall not be scheduled for trial, unless the defendant agrees otherwise, until such period has concluded. It shall be the duty of the defendant to schedule such conference with the court upon proper notice to the plaintiff.

In Syllabus Points 4 and 5 of *State ex rel. Weirton Medical Center v. Mazzone*, 214 W.Va. 146, 587 S.E.2d 122 (2002), we held that the necessity of expert witnesses must be resolved during the mandatory status conference required by W. Va. Code § 55–7B–6 (1986) and that neither party shall be required to disclose experts witnesses before the mandatory status conference is held, notwithstanding contrary expert witness disclosure dates contained within an initial scheduling order entered pursuant to W. Va.R.Civ.P. 16. W. Va.Code § 55–7B–6 was rewritten in 2001. *See*, footnote 7, *infra*. We further held in Syllabus Point 4 of *Daniel v. Charleston Area Medical Center, Inc.*, 209 W.Va. 203, 544 S.E.2d 905 (2001), that "[u]pon a trial court's determination that an expert witness is required to prove standard of care or proximate cause in an action brought under the West Virginia Medical Professional Liability Act, West Virginia Code §§ 55–7B–1 to –11 (1986) (Repl.Vol.2000), a reasonable period of time must be provided for retention of an expert witness."

7. Druckman and Lindsay also filed a motion for partial summary judgment regarding the probable cause issue on August 11, 2003. In this motion, Druckman and Lindsay argued that Dr. Clark's malicious prosecution claims should be dismissed as she had admitted that probable cause existed to file the *Dempsey* action and at the time the *Dempsey* action was filed, the law did not require expert opinions prior to the institution of a medical professional negligence action. W. Va.Code § 55–7B–6(b) was entirely rewritten in 2001 to require a notice of claim be served upon a health care provider 30 days prior to the filing of a medical professional liability action. According to the statute, a certificate of merit executed by a qualified expert is also to be provided in most circumstances. The certificate of merit "shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death." W. Va.Code 55–7B–6 (2001). This statute was amended again in 2003. Those amendments do not effect and are not relevant to the discussion herein.

dated November 15, 2004, the circuit court certified the following questions to this Court:

> 1. Whether an attorney for a party in a lawsuit owes a duty of care to that party's adversary in the lawsuit such that the adversary may assert a cause of action for negligence against the opposing attorney?
> Answer of the Circuit Court: No.
>
> 2. Is a party to a civil action barred, by virtue of the litigation privilege, from bringing any type of claim for civil damages against the opposing party's attorney if the alleged act of the attorney in the course of the attorney's representation of the opposing party is conduct and not a written or oral statement which arose in the civil action and which has some relationship to the civil action?
> Answer of the Circuit Court: Yes.

On January 15, 2005, Dr. Clark filed her Petition to Certify Questions with this Court. Druckman and Lindsay likewise filed their Petition for Certified Questions on February 4, 2005. By Orders dated March 24, 2005, we granted both Petitions and consolidated the matters for purposes of oral argument, consideration and opinion. Upon due consideration of the parties' arguments, the designated record before this Court and the pertinent legal authorities, we now address the certified questions presented.[8]

## II.

### STANDARD OF REVIEW

We begin by recognizing that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. Pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### DISCUSSION

#### A. First Certified Question

Initially, we are asked to determine "[w]hether an attorney for a party in a lawsuit owes a duty of care to that party's adversary in the lawsuit such that the adver-

sary may assert a cause of action for negligence against the opposing attorney[.]" The question of whether a duty of care exists is a question of law. Syl. Pt. 5, *Aikens v. Debow,* 208 W.Va. 486, 541 S.E.2d 576 (2000). Dr. Clark urges this Court to recognize that counsel for a party in a lawsuit owes the opposing party a duty of care, the breach of which would subject counsel to a claim for negligence. Dr. Clark argues recognizing such a duty may aid in preventing frivolous lawsuits. Conversely, Druckman and Lindsay argue that counsel's duty is to zealously advocate and promote the interests of his or her client and that the recognition of a competing duty to an opposing party would compromise counsel's duty to his or her own client. The circuit court indicated its belief that a duty to an opposing party does not exist in its answer to the first certified question. We agree.

We have previously stated that

> [t]his Court holds each and every attorney to the inflexible requirement that he "diligently, faithfully and legitimately perform every act necessary to protect, conserve and advance the interests of his client." *Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 657, 57 S.E.2d 736, 748 (1950). An attorney who deviates from this duty is subject to disciplinary action, *see Rules of Professional Conduct,* and/or civil liability, the latter of which *may be pursued only by the client injured by his counsel's negligence.*

*Delaware CWC Liquidation Corp. v. Martin,* 213 W.Va. 617, 623, 584 S.E.2d 473, 479 (2003) (refusing to permit the assignment of a legal malpractice claim)(emphasis added). *See also Norton v. Hines,* 49 Cal.App.3d 917, 922, 123 Cal.Rptr. 237 (Cal.Ct.App.1975) (noting an attorney's duty is to his client to vigorously pursue the client's case within the bounds of law and the rules of professional conduct). Similarly, the court in *McKenna Long & Aldridge, LLP v. Keller,* 267 Ga.App. 171, 598 S.E.2d 892, 894 (2004), reviewing a number of Georgia cases discussing duty in

---

8. We also recognize the contribution of *amicus curiae* Debra Sams, D.O. to the arguments pre-

sented.

the context of attorneys' relationships with non-clients, noted that:

> [a] defendant attorney owe[s] no duty to the plaintiff ... the attorney's paramount duty [is] to the trial court, as a licensed attorney and officer of the court, and to his client[.] ... [N]o cause of action in negligence [can] lie because the overriding public policy guarding free access to the courts and the fact that the attorney's legal duty is to his own client demand[s] a finding that the attorney owe[s] no duty to an adverse party that would give rise to a claim in negligence, whether to investigate fully the client's claim prior to filing suit or to avoid filing a suit which he knew or should have known was frivolous.

(Internal quotations and citations omitted). An attorney's general duty to the judicial system does not translate into liability in negligence to an opposing party. *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir.1979); *Bickel v. Mackie*, 447 F.Supp. 1376, 1381 (N.D.Iowa 1978).

■ Dr. Clark has not cited a single decision from any court in the United States which supports her position and our own research has not uncovered such a decision. To the contrary, courts which have addressed the issue have uniformly found that an attorney does not have a duty to a third party, including an opposing party, the breach of which would subject the attorney to liability. *See, e.g., Tappen*, 599 F.2d at 379; *James v. Chase Manhattan Bank*, 173 F.Supp.2d 544, 550 (N.D.Miss.2001); *Taco Bell Corp. v. Cracken*, 939 F.Supp. 528, 532 (N.D.Texas 1996); *Bickel*, 447 F.Supp. at 1381; *Norton*, 49 Cal.App.3d at 922, 123 Cal.Rptr. 237; *Krawczyk v. Stingle*, 208 Conn. 239, 543 A.2d 733, 735 (1988); *McKenna*, 598 S.E.2d at 894; *Brody v. Ruby*, 267 N.W.2d 902, 906–7 (Iowa 1978); *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 591–2 (1981); *Eustis v. David Agency, Inc.*, 417 N.W.2d 295, 298 (Minn.Ct. App.1987); *Rhode v. Adams*, 288 Mont. 278, 957 P.2d 1124, 1127–28 (1998); *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, PA*, 106 N.M. 757, 750 P.2d 118, 122 (1988); *Aetna Electroplating Co. v. Jenkins*, 335 Pa.Super. 283, 484 A.2d 134, 136–7 (1984); *Bradt v. West*, 892 S.W.2d 56, 71–72 (Tex.Ct.App. 1994). As aptly stated by the Michigan Supreme Court in *Friedman*, the

creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client. Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship.

*Friedman*, 312 N.W.2d at 591–92 (footnotes omitted).

■ This Court can find no justification for imposing a duty of care in favor of an opposing party upon counsel. Imposition of such a duty can only work to the detriment of counsel's own client and would adversely impact counsel's duty of zealous advocacy for his or her own client and would create an impossible and unjustified conflict of interest. Accordingly, we hold that an attorney for a party in a civil lawsuit does not owe a duty of care to that party's adversary in the lawsuit such that the adversary may assert a cause of action for negligence against the opposing attorney.

### B. Second Certified Question

In the second certified question, we are asked to determine whether the so-called "litigation privilege" extends beyond communications and provides immunity for civil damages for claims arising from conduct occurring during a civil action. Dr. Clark argues that our discussion of the litigation privilege in *Collins v. Red Roof Inns, Inc.*, 211 W.Va. 458, 566 S.E.2d 595 (2002) limits recognition of the same to defamatory *communications* made during the litigation process. Dr. Clark is, to an extent, correct. We did not discuss application of the litigation privilege to conduct occurring during the litigation process in *Collins*. However, we were not presented with the question of whether the litigation privilege applied to litigation conduct in *Collins* as *Collins* involved a certified question regarding the application of the litigation privilege to an alleged pre-suit defamatory statement. This Court, prior to today, has not addressed the issue. However, the circuit court, in its answer to the second certified question indicated its belief

that the litigation privilege does apply to litigation conduct. Again, we agree.

In her concurring opinion in *Barefield v. DPIC Companies, Inc.*, 215 W.Va. 544, 600 S.E.2d 256 (2004), Justice Davis discussed the policies underlying the litigation privilege. Therein she stated:

[t]he public policies associated with the litigation privilege include: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement. *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687, 693 (2003).

*Barefield*, 215 W.Va. at 560, 600 S.E.2d at 272 (Davis, J., concurring). In light of these policies, we see no reason to distinguish between *communications* made during the litigation process and *conduct* occurring during the litigation process. As recognized by the Florida Supreme Court:

absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., v. United States Fire Insurance Company*, 639 So.2d 606, 608 (Fla. 1994). *See also Jackson v. BellSouth Tele-*

*communications,* 372 F.3d 1250, 1274 (11th Cir.2004) (quoting *Levin* ).

In *Collins,* we recognized that absolute privileges, such as the litigation privilege, should only be permitted in limited circumstances. *Collins,* 211 W.Va. at 461, 566 S.E.2d at 598. Thus, we do not believe that a litigation privilege should apply to bar liability of an attorney in *all* circumstances. In *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d. 230, 235 (Colo.1995), the Colorado Supreme court noted that "an attorney is not liable to a nonclient absent a finding of fraud or malicious conduct by the attorney." *See also Baglini v. Lauletta,* 338 N.J.Super. 282, 768 A.2d 825, 833–34 (2001) ("The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process."). We believe such exceptions to an absolute litigation privilege arising from conduct occurring during the litigation process are reasonable accommodations which preserve an attorney's duty of zealous advocacy while providing a deterrent to intentional conduct which is unrelated to legitimate litigation tactics and which harms an opposing party. As recently noted by a California court:

[a] fraud claim against a lawyer is no different from a fraud claim against anyone else. If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability. While an attorney's professional duty of care extends only to his own client and intended beneficiaries of his legal work, the limitations on liability for negligence do not apply to liability for fraud.

*Vega v. Jones, Day, Reavis & Pogue,* 121 Cal.App.4th 282, 291, 17 Cal.Rptr.3d 26, 31–2 (Cal.Ct.App.2004)(internal citations and quotations omitted).

In order "[t]o maintain an action for malicious prosecution it is essential to prove: (1) That the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated favorably to

plaintiff." Syl. Pt. 1, *Lyons v. Davy–Pocahontas Coal Co.*, 75 W.Va. 739, 84 S.E. 744 (1915). The term malicious is defined as "[s]ubstantially certain to cause injury" and "without just cause or excuse." Black's Law Dictionary 977 (8th Ed.2004). This definition implies an improper or evil intent or motive or the intent to do harm. Where an attorney files suit without reasonable or probable cause with the intent to harm a defendant, we do not believe the litigation privilege should insulate him or her from liability for malicious prosecution.

■ As noted above, we can find no reasonable justification for distinguishing conduct from communications for the purposes of the litigation privilege. However, we also recognize the need for limited exceptions from application of the absolute litigation privilege for certain intentional actions. Accordingly, we now hold that the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action.[9]

■ The second question certified to this Court did not provide for the above recognized exceptions to the litigation privilege. Therefore, we invoke the power recognized in Syllabus Point 3 of *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993), to reformulate the question certified so as to fully address the issues presented and reformulate the question presented to read:

> 2. Is a party to a civil action barred, by virtue of the litigation privilege, from bringing claims for civil damages against the opposing party's attorney if the alleged act of the attorney in the course of the attorney's representation of the opposing party is conduct and not a written or oral statement which arose in the civil action

and which has some relationship to the civil action?

Answer: Yes.

Thus, we likewise find the circuit court's answer to the second question certified was substantially correct.

Our ruling today does not permit attorneys or their clients to act without consequence during the litigation process. However, we believe our *Rules of Civil Procedure,* our *Rules of Professional Conduct,* and the court's inherent authority provide adequate safeguards to protect against abusive and frivolous litigation tactics.

For example, Rule 11(b) of our *Rules of Civil Procedure,* provides:

> By presenting to the court (whether by signing, filing, submitting or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . .

Rule 11(c) provides for the imposition of sanctions, including, but not limited to, monetary sanctions for violations of Rule 11(b). Rule 37 provides additional sanctions for discovery violations. In the instant matter, Dr. Clark may have been able to move for sanctions relating to a misrepresentation of expert testimony had Druckman and Lindsay represented that the disclosed experts "would" testify, as opposed to simply stating that the disclosed experts "may be used."

---

9. We pause to clarify that, contrary to Dr. Clark's assertion, the litigation privilege would not operate to preclude a negligence action against opposing counsel if the parties were involved in a traffic accident on the way to some litigation-related proceeding. Negligence in the operation of a motor vehicle is not sufficiently "related to" the underlying civil action to justify invocation of the litigation privilege.

However, the record does not indicate that Dr. Clark ever moved for sanctions in the *Dempsey* action.

 Our *Rules of Professional Conduct* also provide duties governing an attorney's conduct. For example, Rules 3.1 through 3.5 are rules governing an attorney's conduct toward the tribunal, opposing counsel and the opposing party. These rules provide guidelines prohibiting frivolous actions and imposing duties of candor, impartiality and decorum. Where a party or opposing counsel believes an attorney is acting in violation of the *Rules of Professional Conduct*, disciplinary action may be sought. In the instant action, the record does not reveal that Dr. Clark ever sought disciplinary action against any of the defendant attorneys for their alleged misconduct.

Notwithstanding the availability of sanctions under the *Rules of Civil Procedure* and the availability of disciplinary action for violations of the *Rules of Professional Conduct*, a trial court always has inherent authority to regulate and control the proceedings before it and to protect the integrity of the judicial system. As noted by the Florida Supreme Court in *Levin:*

> [c]learly, a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice. In particular, a trial court would have the ability to use its contempt powers to vindicate its authority and protect its integrity by imposing a compensatory fine as punishment for contempt.

*Levin,* 639 So.2d at 608–9. Where an attorney's misconduct so offends the integrity of the judicial system and a party's right to a fair trial, the trial court has inherent authority to impose corrective sanctions.

---

**10.** W. Va.Code § 55–7B–6(b) (1986) provided:
In the even that the court determines prior to trial that either party is presenting or relying upon a frivolous or dilatory claim or defense, for which there is no reasonable basis in fact or at law, the court may direct in any final

Finally, we note that the conduct of which Dr. Clark complains, the filing and prosecution of a medical malpractice action allegedly without supporting expert testimony, has been statutorily remedied. W. Va.Code § 55–7B–6 was amended by the Legislature in 2001 to require, in most instances, the disclosure of relevant expert opinions by the time suit is filed. *See* footnote 7, *supra.* Even prior to the 2001 statutory amendments, W. Va.Code § 55–7B–6 (b) (1986), which was in effect at the time the *Dempsey* action was initiated, provided for the recovery of reasonable litigation expenses incurred if the action was dismissed upon a finding that it was frivolous.[10] It appears Dr. Clark did not avail herself of these statutory remedies in the *Dempsey* matter. Instead, she instituted the instant action against the Dempsey's counsel.

## IV.

### CONCLUSION

In the instant matter, we find that an attorney does not owe an opposing party a duty of care, the breach of which would subject the attorney to negligence liability. Further, the litigation privilege generally operates to preclude actions for civil damages arising from an attorney's conduct in the litigation process. However, the litigation privilege does not apply to claims of malicious prosecution and fraud.

### CERTIFIED QUESTIONS ANSWERED

judgment the payment to the prevailing party of reasonable litigation expenses, including deposition and subpoena expenses, travel expenses incurred by the party, and such other expenses necessary to the maintenance of the action, excluding attorney's fees and expenses.